IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

RACHEL BROWN HEFFERNAN BRYANT, et al.,                    PLAINTIFFS
on behalf of themselves and others similarly situated

V.                                            CAUSE NO.: 1:13-CV-00246-SA-DAS

UNITED FURNITURE INDUSTRIES, INC.                           DEFENDANT

MEMORANDUM OPINION

In this action, former and current employees of United Furniture Industries, Inc. ("UFI") are collectively pursuing claims against UFI for violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"). At the current posture, 1,285 employees[1] have opted into a conditional class, which has been initially certified pursuant to the two-step procedure utilized in FLSA collective actions.[2]

Defendant filed the pending Motion for Partial Summary Judgment [163], arguing that an agreement reached in a previous lawsuit precludes the vast majority of the employees from participating here. For the reasons set forth below, UFI has failed to establish as a matter of law that the employees settled their claims as a result of a "bona fide dispute" over hours worked or amount owed. Therefore, the motion is DENIED.

*Factual and Procedural Background*

In late 2013, factory workers at UFI plants filed two separate FLSA cases. In both actions, UFI employees sought recovery for unpaid minimum wage and overtime compensation, as well as certification as a collective action under FLSA Section 16(b).

---

[1] Nine employees have since filed stipulations of dismissal.

[2] The contours of the two-step procedure, often termed the "*Lusardi* approach," are set forth in this Court's memorandum opinion on class certification. Mem. Op. Order Mot. Certify Class, at 6-7 [108].

The first case filed, *Carothers v. United Furniture Industries, Inc.*, No. 1:13-CV-203-DAS ("*Carothers*"), was also the first to be resolved. The magistrate judge, obtaining jurisdiction by consent of the parties, certified the requested collective action, joined by 495 UFI employees. The magistrate judge approved a settlement agreement by the parties, and then entered a final judgment of dismissal on January 23, 2015. Although only 495 employees complied with Section 16(b)'s opt-in procedure by filing a written consent with the court, the settlement collective approved by the magistrate judge was defined broadly to include:

> All persons employed by Defendants as non-exempt factory workers in Mississippi, North Carolina or California from October 15, 2010, through the date of the Court's Order Granting Approval of this settlement in regard to claims of any kind or nature under the Fair Labor Standards Act and for liquidated damages.

To carry out this purportedly widespread settlement, the magistrate judge approved a claims procedure to be conducted by a third-party claims administrator. Between January and October of 2015, the *Carothers* administrator mailed to current and former UFI employees a notice of settlement and a distribution check in the amount of approximately $80. According to the agreement, notice, and check, anyone who cashed the check consented to join *Carothers* and agreed to be bound by the settlement agreement. The agreement and notice further stated that anyone who did not cash the check would not be "included in the Settlement Collective, and w[ould] not be personally bound . . . other than as to the preclusive effect of the collective class certification." Over 7,500 UFI employees cashed distribution checks.

Meanwhile, a motion for certification in *Bryant*, this case, was pending. Opposing the motion and citing the settlement agreement from *Carothers*, UFI maintained that the *Bryant* Plaintiffs were precluded from seeking collective certification, as that right had been foreclosed by the earlier litigation. The Court found UFI's arguments unavailing because the *Bryant* Plaintiffs and putative class members had not opted into the *Carothers* suit as is required by

Section 16(b). Mem. Op. Order Mot. Certify Class, at 4-5 [108]. A collective action was conditionally certified, exclusive of any employees who had participated in *Carothers*. *Id.* at 9-11.

By October 14, 2015, after the first phase of the *Bryant* certification process, the "notice" or "opt-in" phase, 1,285 current or former UFI employees had joined the conditionally certified class.³ As of October 7, 2015, 1,029 of the 1,285 *Bryant* Plaintiffs had cashed checks distributed by the *Carothers* claims administrator. It is unclear whether the plaintiffs received and cashed their checks before or after they joined in this action.

UFI argues that the *Bryant* Plaintiffs who cashed their checks executed a state-law release of their FLSA claims and are barred from continuing in this suit. Plaintiff contends, *inter alia*, that no "bona fide dispute" as to liability existed when payment was accepted, and that any such release is invalidated by the statutory policy of the FLSA.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). When, as here, the defendant seeks summary judgment by use of an

---

³ Of the 1,285, it appears that at least a few of the employees have already participated in the *Carothers* action. UFI has not moved to dismiss these plaintiffs on these grounds, but as to any plaintiffs who previously filed effective written consents in *Carothers*, today's ruling is inapplicable.

3

affirmative defense, it "must establish beyond peradventure all the essential elements of the defense . . . to warrant summary judgment . . . ." *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Discussion and Analysis*

In two cases, decided in consecutive terms, the United States Supreme Court refused to enforce private settlements of employees' FLSA claims. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S. Ct. 895, 89 L. Ed. 1296 (1945); *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 90 L. Ed. 1114 (1946).[4] Resting on congressional concerns about unequal bargaining power between employer and employee, the Court invalidated the attempted settlements where there was no "bona fide dispute" as to liability, *O'Neil*, 324 U.S. at 708, 713, 65 S. Ct. 895, and where there was a "bona fide dispute," but only as to the legal question of coverage under the Act. *Gangi*, 328 U.S. at 115-16, 66 S. Ct. 925. Explicitly left open, however, was whether parties could privately settle FLSA claims when there existed a "bona fide dispute," not as to legal

---

[4] Justice Hugo Black, who as a Senator sponsored the FLSA, joined the majority in both cases.

coverage, but as to the factual "hours worked or the regular rate of employment." *Id.* at 114-15, 66 S. Ct. 925.[5]

On the heels of these early Supreme Court decisions, "many courts have held that, in the absence of supervision by the Department of Labor or scrutiny from a court, a settlement of an FLSA claim is prohibited." *Bodle v. TXL Mortg. Corp.*, 788 F.3d at 164 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007)); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203 (2d. Cir. 2015), *cert. denied*, 2016 WL 100438 (U.S. Jan. 11, 2016). The Fifth Circuit too recognizes that, as a "general rule," FLSA claims cannot be waived through a private agreement. *Bodle*, 788 F.3d at 164.

However, in what has since become the minority approach among the Circuits, the Fifth Circuit has endorsed a "limited" exception from the usual prohibition. *Id.* A private settlement is valid and enforceable within the Fifth Circuit if it is "reached due to a bona fide FLSA dispute over hours worked or compensation owed . . . ." *Id.* (citing *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012)). When there is a "bona fide factual dispute," a plaintiff does not contravene FLSA policy by bargaining away her entitlement to compensation and liquidated damages because she "receive[s] compensation for the disputed hours." *Id.*

The Fifth Circuit first applied the "bona fide dispute" standard to determine the validity of a private FLSA settlement in *Martin*. 688 F.3d at 255. Four employees working on a movie set under a collective bargaining agreement filed a grievance against their employer, alleging they had not been paid for certain hours worked. *Id.* at 249. They commenced suit to recover the

---

[5] The Western District of Texas questioned the continuing validity of *O'Neil* and *Gangi* in light of the Portal-to-Portal Act, a 1947 amendment to the FLSA. *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 627 (W.D. Tex. 2005). But the Fifth Circuit has since cited with approval these Supreme Court cases in invalidating settlements that were reached contrary to FLSA policy. *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 162-63, 165 (5th Cir. 2015).

unpaid wages, but before their claims were resolved, their Union representative settled the FLSA claims on their behalf, which he was empowered to do by the collective bargaining agreement. *Id.* at 249-54. The Fifth Circuit noted that the Union representative investigated the employees' wage claims, "received conflicting information from various sources," and concluded that "it would be impossible to determine whether [plaintiffs] worked on the days they had claimed . . . ." *Id.* at 255. There was, accordingly, a "bona fide dispute" as to hours worked and an enforceable settlement of claims. *Id.* at 257.

The Fifth Circuit again evaluated whether a private settlement resulted from a "bona fide dispute" in *Bodle*, decided last year. 788 F.3d 161-165. The employer in *Bodle* originally filed suit against its employees in Texas state court, alleging nine state-law causes of action arising from non-compete and non-solicitation of client provisions in their employment contracts. *Id.* at 161-62. The parties privately settled the dispute and purportedly released "all actual or potential claims, demands, actions, causes of action, and liabilities of any kind or nature" against their former employer. *Id.* The employees subsequently filed an FLSA overtime suit in federal court. *Id.* at 161. The Fifth Circuit found no "bona fide dispute" over hours worked or compensation owed arising from the state court settlement agreement. *Id.* at 165. There was no mention of "overtime compensation or the FLSA in [the parties'] settlement negotiations" and thus "no factual development of the number of unpaid overtime hours nor compensation due for unpaid overtime." *Id.* at 165. The purported waiver of the plaintiffs' FLSA claims was ineffective. *Id.*

This case more closely resembles *Bodle* than *Martin*. There is no evidence that the claims of the 1,029 Plaintiffs who cashed the checks were factually developed as to "number of unpaid . . . hours" or "compensation due" at the time payment was received. Though UFI has consistently and broadly denied any wrongdoing in violation of the FLSA, there has been no showing that the

1,029 Plaintiffs were aware of their rights under the FLSA, or that they even believed they had legitimate claims to be settled. Numerous employees have submitted declarations to the contrary, claiming they were "surprised" at receiving the check and knew "nothing about labor laws" or any "possible claim for working off the clock and not being paid overtime for such work . . . ."[6] Unlike in *Martin*, nothing suggests the employees had filed suit when they received their checks, and they were not represented by counsel in reaching the purported settlement.

More like *Bodle* where the FLSA was unmentioned in the settlement negotiations, *id.* at 65, the record here is void of *any* negotiations between the 1,029 Plaintiffs and UFI. Indeed, the purported "offer" check was issued from a trust established by the third party *Carothers* claims administrator, not from UFI. Similarly, the accompanying notice of settlement instructed the employees to direct any questions to *Carothers* plaintiff's counsel, not to UFI or its counsel.

To be sure, there was reference to the employees' FLSA claims against UFI in the "notice of settlement" supplied by the claims administrator. But the notice included significant and erroneous information at odds with the FLSA opt-in procedure as previously outlined in this case. It stated, for example, that "United Furniture's records indicate you are a member of the settlement class" and that by cashing the settlement check, the employee would "be deemed to have consented to join [in *Carothers*] and to have released or waived" her FLSA claims. Perhaps more egregiously, the notice also informed all employees that they had already lost their right to collectively pursue their claims due "to the preclusive effect of the class certification[,]" regardless of whether they cashed the check or opted into *Carothers*. As the Court has explained repeatedly in this proceeding, Plaintiffs who did not opt into *Carothers* by filing written consents

---

[6] The Court recognizes that as many as five of the 131 employees who submitted declarations may have previously filed written consents in the *Carothers* action. Their statements under oath that they knew nothing about the *Carothers* suit or their FLSA claims undoubtedly raises Rule 11 concerns. But the Court is not prepared to disregard the many other affidavits for summary judgment purposes.

with the Court "*cannot* have been parties to *Carothers*" and "can neither benefit from nor be bound by the *Carothers* judgment[,]" no matter "what the terms of the parties' agreement may indicate." Mem. Op. Order Mot. Certify Class, at 4-5 [108]; *see also* Order Den. Mot. Amend/Correct, at 4 [122] ("[T]he Court finds that the scope of the *Carothers* class was established on January 23, 2015, the day the magistrate judge rendered a final judgment and dismissed the case with prejudice."); 29 U.S.C. § 216(b). The notice of settlement was simply incorrect.[7]

The notice of settlement also highlights the fundamental complication in UFI's argument that an enforceable settlement was reached as part of a lawsuit to which the *Bryant* Plaintiffs were not privy. Beginning with the heading of the notice, and appearing on every subsequent page, is a reference to the *Carothers* action. The binding effect that would purportedly result from cashing the check—so states the notice—is through participation in *Carothers*, not through some private contractual act (as UFI now claims). Indeed, to demonstrate a "bona fide dispute," UFI relies on discovery and the settlement negotiations from *Carothers*, both of which are referenced in the notice of settlement. But the Plaintiffs were not parties in *Carothers*, and there is no evidence that they were otherwise represented by *Carothers*' class counsel.

Thus, in effect, UFI has attempted to circumvent Section 16(b)'s opt-in requirement by asserting a privately enforceable agreement that is cloaked in judicial attire. The concerns recognized by the Supreme Court of the unequal bargaining power "at the worst between employers and individual employees or at best between employers and the employees' chosen representatives," *Gangli*, 328 U.S. at 116, 66 S. Ct. 925, are only heightened when a court's stamp of approval accompanies the employer's offer of settlement.

---

[7] Even if a "bona fide dispute" did exist, the defective notice of settlement could render any agreement void or voidable under the law of the various states applicable to the purported settlement agreements. *See* Restatement (Second) of Contracts §§ 163, 164.

The difference between this case and a case on which UFI relies, *Lipnicki v. Meritage Homes Corp.*, 3:10-CV-605-GC, 2014 WL 923524 (S.D. Tex. Feb. 13, 2014), further illustrates why UFI is not entitled to summary judgment on the basis of the *Carothers* settlement checks.[8] In *Lipnicki*, an earlier opt-out class action under Federal Rule of Civil Procedure 23 had been instituted in California state court under California state labor laws, and a settlement was reached in its course. *Id.* at *15. Several California plaintiffs later sought to join in the *Lipnicki* suit, but the Southern District of Texas held that their FLSA claims were precluded by the California settlement and judgment. *Id.* at *14-*16. The court explained that enforcement of the California settlement was "an easier call" than the enforcement of the private agreement in *Martin*, because in *Lipnicki*, the earlier release "was part of the settlement of a lawsuit, and one that required court approval." The California settlement was negotiated by "class counsel who had a duty to represent the interest of all class members," and was only approved after a fairness hearing as required by Federal Rule of Civil Procedure 23(e)(2). *Id.* at *14. Additionally, Rule 23's opt-out procedure effectively bound the California plaintiffs to the judgment in the earlier case as a matter of *res judicata*. *Id.* at *16.

The ingredients critical to the *Lipnicki* holding are not present here. *Carothers* counsel did not represent the *Bryant* Plaintiffs; no Rule 23 fairness hearing was held; and the *Carothers* judgment has no binding effect on absent employees. The settlement agreement raised in this case, negotiated and approved in *Carothers*, did not pertain to the *Bryant* Plaintiffs, who did not participate in that suit.

For all these reasons, the Court finds that UFI has failed to "establish beyond peradventure," *Wilson*, 776 F.3d at 299, that the 1,029 *Bryant* Plaintiffs who cashed checks

---

[8] *Lipnicki* was decided before the Fifth Circuit's decision in *Bodle*.

settled their claims as a result of a "bona fide dispute" over hours worked or compensation owed. Summary judgment must be denied.

*Conclusion*

UFI has failed to show, as a matter of law, the existence of a valid and enforceable settlement agreement as to the Plaintiffs who cashed distribution checks. Accordingly, the Motion for Partial Summary Judgment [163] is DENIED. A separate order to that effect shall issue this day.

SO ORDERED, this the 18th day of May, 2016.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE