IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

RACHEL BROWN HEFFERNAN BRYANT, et al.                                    PLAINTIFFS

V.                                                        CIVIL ACTION NO. 1:13CV246-SA-DAS

UNITED FURNITURE INDUSTRIES, INC.,                                         DEFENDANT

MEMORANDUM OPINION

In this action, former and current employees of United Furniture Industries, Inc. ("UFI") collectively pursued claims against UFI for violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"). Pending before the Court is the Parties Joint Motion for Settlement Approval of FLSA claims [229], Plaintiff's Motion for Attorney's Fees and Costs [230], and Defendant's Motion for Joinder for Attorney's Fees and Costs [232].

*Factual and Procedural Background*

In late 2013, factory workers at UFI plants sought recovery for unpaid minimum wage and overtime compensation, as well as certification as a collective action under Section 216(b) of FLSA. Approximately 1,320 individuals filed consents to opt-in to this action. Plaintiffs' claims were subsequently limited to workers in Defendant's Mississippi factory locations. After dismissal of claims of workers barred by the statute of limitations and those who did not otherwise fit within the class definition, 553 Opt-in Plaintiffs remained.

Both parties served and responded to extensive discovery, including the disclosure of thousands of pages of documents, including pay and time records, and responses to over a hundred total interrogatories. The parties ultimately came to a settlement agreement on August 5, 2016. Thereafter, Plaintiffs motioned to Certify the Class, and Defendant joined. The Court granted the motion, ordering that the final Class be defined as follows:

> All persons employed by the defendant from January 1, 2010 until December 30, 2013 as employees paid on a production basis as furniture manufacturers in the operation of the defendant's furniture manufacturing plants in the State of Mississippi who worked off the clock and were not paid for overtime wages under the FLSA, and whose claims are not time barred, with the exception of those persons who previously "opted in" to the lawsuit *Carothers v. United Furniture Ind., Inc.*, No. 1:13-cv-00203-DAS and reached a settlement of their claims in its course.

*The Terms of the Settlement*

As set out in greater detail within the Settlement Agreement, a settlement fund of $400,000.00 will pay claims of the class, litigation, settlement costs and attorney's fees. Rachel Brown Heffernan Bryant and Kenny Bryant thoroughly assisted Class Counsel and staff throughout the suit and settlement conferences, serving as liaisons with the group. Therefore, as class representatives, they will receive $10,000.00 in the form of a Class Representative Incentive Award. The remainder of the named plaintiff class representatives, Anthony Brown, David L. Franks, Allie Everett, and Eric Thomas will each receive a $1,000.00 award as named plaintiffs.[1]

Members of the Settlement Class will receive $79,334.57 on an equal pro-rata basis as income for unpaid overtime benefits. The Settlement Class will also receive $79,334.57 in the form of liquidated damages. Checks issued to a Settlement Class member that remain uncashed for more than 90 days shall become null and void. Finally, Class Counsel, W. Howard Gunn will receive $160,000 in the form of attorney's fees and $57,330.86 for expenses.

*Settlement Approval*

The FLSA provides that a suit may be instituted by "one or more employees for and on behalf of himself or themselves and other employees similarly situated" to recover unpaid

---

[1] The named Plaintiff Cleveland Woodrow Oliver, Jr. is not designated as a class representative as he failed to maintain communication with class counsel, or provide assistance during the course of the litigation, and now cannot be located.

minimum wages, overtime compensation, and liquidated damages from employers who violate the statute's provisions. 29 U.S.C. § 216(b). This type of collective action follows an "opt-in" procedure in which "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."[2] *Id*.

In the absence of supervision by the Department of Labor or scrutiny from a court, a settlement of an FLSA claim is generally prohibited. *Bodle v. TXL Mortg. Corp.*, 788 F. 3d 159, 164 (5th Cir. 2015). In order to approve a settlement proposed by an employer and employees of a suit brought under the FLSA and enter a stipulated judgment, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352 (11th Cir. 1982); *Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. Sept. 23, 2004).

*Bona Fide Dispute*

In essence, the Court must ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime. 29 U.S.C. §§ 206, 207; see also *Lynn's Food Stores, Inc.*, 679 F.2d at 1352 (FLSA provisions are mandatory; the "provisions are not subject to negotiation or bargaining between employer and employee"). If no question exists that the plaintiffs are entitled under the statute to the compensation they seek (and therefore to liquidated damages, as well), then any settlement of such claims would allow the employer to negotiate

---

[2] Section 216(b) actions differ from Federal Rule of Civil Procedure Rule 23 class actions in that members of the class are permitted to "opt-in" rather than "opt-out" of the class. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir.1995). Rule 23 and § 216(b) class actions are "mutually exclusive and irreconcilable," and those who choose not to opt-in to a class action under § 216(b) are not bound by, and may not benefit from, the judgment. *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288–89 (5th Cir.1975) (per curiam).

around the statute's mandatory requirements. Without a bona fide dispute, no settlement could be fair and reasonable. "Thus some doubt must exist that the plaintiffs would succeed on the merits through litigation of their claims." *Collins v. Sanderson Farms*, *Inc*., 568 F. Supp. 2d 714, 721 (E.D. La. 2008).

In the case at bar, after the deadline passed for eligible conditional class members to opt in to the action, the parties underwent investigation and discovery. Testimony was elicited from employees or former employees of United Furniture wherein they described being required to work off the clock. However, the testimony regarding frequency and duration, or how often and to what extent employees were required to work of the clock was not uniform. Furthermore, discovery showed that the overtime work was limited only to employees that were paid based on an hourly wage—not production. The production workers were paid based on rates of production, meaning that the alleged requirement of working off the clock did not impact the production employees' regular wage rate, but only impacted potential overtime wages of hourly employees.

United Furniture denied Plaintiffs' claims, and management testified in depositions that such practices did not occur. Further, wage records of the named Plaintiffs and opt in Plaintiffs showed regular payments of overtime benefits to the Plaintiffs. Therefore, while the claims asserted in the complaint were supported by the testimony of named and opt in Plaintiffs, their claims were disputed by both past and present management and non-management employees of United Furniture who had no direct financial stake in the outcome of this action, as well as business record evidence.

The Court agrees that this settlement reflects a reasonable resolution of a bona fide dispute between the parties. *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th

Cir. 1947). Considering the extent of litigation and discovery in this matter thus far, some doubt still exists as to whether Plaintiffs would succeed on the merits of their claim. Therefore, it cannot be said that the parties are merely negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.

*Fair and Reasonable Resolution*

After a district court is satisfied that a bona fide dispute exists, it must then determine whether the settlement is fair and reasonable. In *Hoffmann–La Roche, Inc., v. Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989), the Supreme Court held that § 216(b) "must grant the [district] court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to the statutory commands of the Federal Rules of Civil Procedure." *Id.* at 170, 110 S. Ct. 482.

Although Rule 23 does not control FLSA collective actions, many courts have adopted many of Rule 23's procedures in such actions by analogy, in an exercise of their discretion to manage the litigation of collective actions under § 216(b). *See, e.g., Collins, 568 F. Supp. 2d at 719*; *Brask v. Heartland Automotive Services, Inc.*, 2006 U.S. Dist. LEXIS 62313, 2006 WL 2524212, *2 (D. Minn. Aug. 15, 2006); *Hitchcock v. Orange County, Fla.*, 2006 U.S. Dist. LEXIS 89504, 2006 WL 3614925, *5 (M.D. Fla. Dec. 11, 2006). Under Rule 23, a court should consider the following six factors to determine whether a settlement is "fair, adequate and reasonable: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives and absent class members." *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

The Court finds no evidence of any fraud or collusion. Furthermore, the parties engaged in arm's length and good faith settlement negotiations, including a day-long mediation. Therefore, there is no evidence of the first factor, fraud or collusion.

Turning to the next three factors, in the more than three years since the Complaint was filed, the parties have engaged in extensive discovery, held numerous depositions, and propounded thousands of pages of documents, including pay and time records. The parties responded to over one hundred interrogatories. The parties fully understood the strengths and weaknesses of their respective positions and earnestly worked to achieve a fair and reasonable resolution of the conflict. This suit has already cost the parties three years of diligent effort, as well as over $50,000 in expenses. Without grant of settlement, this suit will most certainly result in a substantial and lengthy trial, wherein Named Plaintiffs would represent 553 other class members. The costs of such trial may detract so from the expected award as to make it less favorable to all involved parties than settlement, for the probability of Plaintiffs' success on the merits is difficult to gage, considering the evidence which contradicts their allegations. At this point in the proceedings, the Court finds that the complexity, expense and likely continuing duration of this matter weighs heavily in favor of settlement. The next factors also weigh in favor of settlement, for the stage of proceedings is quite progressed, and the probability of Plaintiffs' success is difficult to ascertain.

Regarding the next two factors, range of possible recovery and opinions of class counsel, the Court also finds settlement to be fair and reasonable. The settlement amount is properly reflective of the amount Plaintiffs stood to gain, offset by the further significant delay that would result from extensive and expensive litigation. Furthermore, it is possible that Plaintiffs would recover nothing. As to the opinions of class counsel, the parties joined in requesting approval of

the settlement, which was arrived at after extensive negotiation by class counsel. The counselors worked in good faith to secure settlement, taking into account the risks and uncertainty involved in litigation of their claims.

The consideration of the "opinions of absent class members" is one that perhaps reflects the starkest difference between class actions under Rule 23 and collective actions pursuant to § 216(b): the requirement that class members affirmatively give their consent to join in the latter. All the present Plaintiffs to this collective action have agreed to join in this lawsuit, and be represented by the named Plaintiffs' counsel. All participating Plaintiffs have expressed an opinion regarding the settlement, to a degree that satisfies the Court, by virtue of remaining in the lawsuit. Because no real "absent" class members exist whose rights will be determined in this settlement that have not consented to participate, the Court need not consider such interests as it would in a settlement of a class action under Rule 23.

*Reasonable Attorney's Fees*

Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to an award of reasonable attorney's fees and costs. The Defendants have agreed upon the amount Plaintiffs are seeking in the fees and do not object to the Plaintiff's motion. However, as part of its fairness determination, the Court must also determine that the proposed attorney's fees are reasonable. *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998).

In the Plaintiffs' Motion for Attorney's Fees, Attorney Howard Gunn has requested the Court use the "common fund" method, cross checked with factors from *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due

7

to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

Noting that many courts in this Circuit use this method when calculating attorneys' fees in common fund class action cases, Counselor Gunn requests that this Court award to him 40% of the common fund. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *see also Bethea v. Sprint Commc'ns Co.*, 2013 WL 228094, *3 (S.D. Miss. Jan. 18, 2013) ("adopt[ing] the percentage-of-the-fund approach" to calculate attorneys' fees in a common fund class action case). This court has substantial discretion in determining the appropriate fee percentage. However, awards commonly fall between a lower end of 20% and an upper end of 50%. *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 503 (N.D. Miss. 1996). In the case at bar, the *Johnson* factors weigh heavily in Class Counsel's favor, and the Court agrees that he is entitled to the 40% requested.

*The Johnson Factors*

The Fifth Circuit has explained that of the Johnson factors, the court should "give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990)).

Prosecuting and settling these claims demanded considerable time, skill and labor. Over one thousand individuals have filed consents to opt into this action. In addition to the massive amount of discovery that Class Counsel reviewed, he also served notice upon the class and

maintained the administration of Plaintiff consents and opt-ins. Class Counsel overcame oppositions to Motions to Certify Class, as well as Motions for the Application of Res Judicata and Partial Summary Judgment. Ultimately, Class Counsel reached a favorable settlement agreement with Defendants, after spending more than 2951 hours on this case. It is apparent that Class Counsel's ability to seek other work was limited by the massive amount of work involved in this case. Nevertheless, Counsel confronted these issues without any assurances as to how the court would rule, accepting the case and the substantial risks that accompanied it. Adequate compensation is necessary to insure that counsel of this caliber is available to undertake these kinds of cases in the future. Therefore, *Johnson* factors (1), (2), (3), (8), (9) and (10) weigh in Class Counsel's favor. *Johnson*, 488 F.2d at 717-18.

As to the customary fee and whether the fee is fixed or contingent, Class Counsel prosecuted the action entirely on a contingent fee basis. In undertaking to prosecute this complex class action on that basis, Class Counsel assumed a significant risk of nonpayment or underpayment. In recognizing the contingent risk of nonpayment in class action cases, courts have found that counsel ought to be compensated for risk of loss or nonpayment assumed by carrying through with the case. See *King v. United SA Federal Credit Union*, 744 F. Supp. 2d 607, 618 (W.D. Tex. 2010) (finding the fact that class counsel undertook the case on a contingency fee basis relevant to the *Johnson* analysis). Class Counsel's has a 40% contingency agreement with Plaintiffs in the case at bar. Therefore, Plaintiffs, who have been working with Class Counsel for numerous years on this matter were on notice of the amount. The Court is satisfied that Johnson factors (6), (7) and (11) weigh in Class Counsel's favor. *Johnson*, 488 F.2d at 718.

Public policy concerns such as ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee. It was uncontroverted that the time spent on the action was time that could not be spent on other matters, and thus this factor (4) supports the requested fee, as well. *Id*.

Furthermore, when cross-checked with the lodestar method, the attorney's fees are reasonable. "A cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in the lodestar multiplier." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 752 (S.D. Tex. 2008) (citing *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006)). The purpose of a lodestar cross-check of the results of a percentage fee award is to avoid windfall fees, i.e., to "ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 (3d Cir. 2005).

Class Counsel reports that he spent 2951 hours on this case, and that his standard hourly rate is $300.00.[3] Multiplying the hours expended by counsel and staff by the attorney's hourly rate results in total fees of $8,853,000.00. Dividing the proposed attorney fee award of $160,000.00 by the lodestar of $8,853,000.00 yields a multiplier of about 0.02. The Court finds this to be a reasonable calculation of fees because it cross-checks appropriately with acceptable lodestar multipliers. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1088 n. 52 (S.D. Tex. 2012) ("In our informal review of opinions evaluating a lodestar cross-check, the multipliers ranged from about 1.0 to over 5.0, with a substantial number of multipliers in the 3.0 to 4.0 range").

---

[3] The Court finds this a reasonable hourly rate. *See Worrell v. Houston CanA Acad.*, 287 F. App'x. 320, 327 (5th Cir. 2008) (affirming hourly rate of $500.00 for senior partner).

Finally, the Court finds Class Counsel's request for $57,330.86 in costs to be reasonable. It is uncontroverted that Class Counsel spent this amount to cover the costs related to travel, expert witnesses, investigation, discovery, service of process, and other administrative needs.

*Conclusion*

The parties Joint Motion for Settlement Approval and General Release is hereby GRANTED. Furthermore, The Plaintiffs' Motion for Attorney's Fees and Costs, which has been joined by the Defendant, is also GRANTED. The trial of this matter is CANCELLED and this case is CLOSED.

IT IS SO ORDERED this 16th day of February, 2017.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE